IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Boyd N. Boland

Civil Action No. 08-cv-01681-CMA-BNB

MICHAEL J. URNESS,

Plaintiff,

v.

SIBLING ENTERTAINMENT GROUP, INC., a New York corporation,
MITCHELL MAXWELL, an individual,
JAMES CARDWELL, an individual,
RICHARD BERNSTEIN, an individual, and
DOES 1 through 10, inclusive,

Defendants.
_____

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
_____

This matter arises on **Defendants' Motion to Dismiss Plaintiff's Amended Securities Fraud and Fraud Claims** [Doc. #24, filed 01/28/2010] (the "Motion"). I respectfully RECOMMEND that the Motion be GRANTED.

The plaintiff filed his initial Complaint on August 8, 2008. He filed an Amended Complaint [Doc. #18-2] (the "Amended Complaint") through counsel on December 18, 2009. The plaintiff is suing Sibling Entertainment Group, Inc. ("Sibling"); Mitchell Maxwell, the Chief Executive Officer of Sibling; James Cardwell, the Chief Operating Officer and Chief Financial Officer of Sibling; and Richard Bernstein, the Director of Sibling. The Amended Complaint contains the following general allegations:

1. During the months of June and July 2006, the plaintiff met with defendants Maxwell and Bernstein about investing in Sibling. *Amended Complaint*, p. 3, ¶ 11.[1]

2. During those meetings, the defendants "persuaded" the plaintiff to invest $50,000 in a Series "H" Convertible Secured Debenture. Id. at pp. 3-4, ¶ 12 and Ex. A. The debenture is secured by the proceeds from the sale of a Purchase Option on a parcel of real property known as the Denver Civic Theatre (the "Property"); proceeds from the exercise of the Purchase Option and sale of the Property; various revenues from a musical production entitled "HATS!"; and excess proceeds from the issuance of Sibling's private offering of common stock entitled "Series F." Id. and Ex. A, § 6.

3. On August 7, 2006, Sibling sold another $50,000 Series "H" Convertible Secured Debenture to the plaintiff under identical terms. Id. at p. 4, ¶ 13 and Ex. B.

4. The securities were not registered with the Securities and Exchange Commission ("SEC"). Id. at ¶ 14.

5. Pursuant to the terms of the debentures, Sibling had a right to extend the maturity date of the debentures from July 26, 2007, to December 2007. Id. at ¶ 15.

6. At Sibling's request, the plaintiff agreed to a further extension of the maturity date to February 2008. Id. at ¶ 16.

7. Discussions between the plaintiff and the defendants to negotiate further extensions were unfruitful. The plaintiff notified Sibling that it was in default under its debenture terms and conditions. Sibling promised repayment of the entire obligation, and it paid the plaintiff by wire transfer the interest owing through May 2008. The plaintiff then requested that Sibling exercise

---

[1] I cite to the page numbers of the Complaint as they are assigned by the plaintiff.

its option to purchase and then resell the Property in a "commercially reasonable" manner. Id. at pp. 4-5, ¶ 17.

8. "Sibling has defaulted on its obligations under each of the debentures. Nothing under the 'security' part of the Debenture has been paid to Plaintiff with respect to the Property or the excess funds received under the Series 'F' round of financing. Apparently, there was never really any 'option' on the Property for Plaintiff (or others similarly situated) to demand that Sibling sell or exercise in order to repay its debenture indebtedness." Id. at p. 5, ¶ 18.

The Amended Complaint asserts four claims for relief. Claim One alleges breach of contract by defendant Sibling. Id. at pp. 5-7. Claim Two alleges that defendants Sibling, Maxwell, and Bernstein violated the Securities Exchange Act and Rule 10b-5. Id. at pp. 8-10. Claim Three alleges fraud in the inducement, and Claim Four seeks specific performance. Id. at pp. 10-14. The defendants seek dismissal of Claims Two and Three.

## **CLAIM TWO**

Claim Two alleges that defendants Sibling, Maxwell, and Bernstein violated the Securities Exchange Act of 1934 and Rule 10b-5. *Amended Complaint*, p. 8, § IV caption. Claim Two further alleges that all of the individual defendants are controlling persons under 15 U.S.C. § 78o and are, therefore, derivatively liable for the company's acts. Id. at p. 10, ¶ 38.

Congress enacted the Private Securities Litigation Reform Act of 1995 (the "PSLRA") to stem abuses in private securities fraud suits. Tellabs, Inc. v. Makor Issues & Rights, LTD, 551 U.S. 308, 313 (2007). The PSLRA amended the Securities Exchange Act of 1933 and 1934 and imposed specific, stringent pleading requirements on complaints alleging securities fraud under Section 10(b). Philadelphia v. Fleming, 264 F.3d 1245, 1258 (10th Cir. 2001).

3

Section 10(b) of the PSLRA makes it unlawful "for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange" . . . "[t]o use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, or any securities-based swap agreement, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors." 15 U.S.C. § 78j(b) (as amended by PL 111-203, July 21, 2010, 124 Stat 1376).

Rule 10b-5 implements section 10(b) and makes it unlawful:

> (a) To employ any device, scheme, or artifice to defraud,
>
> (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
>
> (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b-5.

The PSLRA requires that a plaintiff's complaint "specify each statement alleged to have been misleading [and] the reason or reasons why the statement is misleading." 15 U.S.C. § 78u-4(b)(1).

Under Rule 10b-5, the complaint "must contain allegations addressing the following five elements: (1) the defendant made an untrue or misleading statement of material fact, or failed to state a material fact necessary to make statements not misleading; (2) the statement complained of was made in connection with the purchase or sale of securities; (3) the defendant acted with

4

scienter, that is, with intent to defraud or recklessness; (4) the plaintiff relied on the misleading statements; and (5) the plaintiff suffered damages as a result of his reliance." Adams v. Kinder-Morgan, Inc., 340 F.3d 1083, 1095 (10th Cir. 2003).

"To establish liability under § 10(b) and Rule 10b-5, a private plaintiff must prove that the defendant acted with scienter." Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 318 (2007). "[T]he appropriate level of scienter in securities fraud cases is a mental state embracing intent to deceive, manipulate, or defraud." Fleming, 264 F.3d at 1259 (internal quotations omitted) (quoting Ernst & Ernst, 425 U.S. 185, 193 n.12 (1976)). In this circuit, recklessness also satisfies the scienter requirement. Anixter v. Home-Stake Prod. Co., 77 F.3d 1215, 1232 (10th Cir. 1996). "[R]ecklessness is defined as conduct that is an extreme departure from the standards of ordinary care, and which presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it." Fleming, 264 F.3d at 1260 (internal quotations and citations omitted).

The Supreme Court has defined "strong inference" to include competing inferences:

> [T]o determine whether a complaint's scienter allegations can survive threshold inspection for sufficiency, a court governed by [§ 78u-4(b)(2)] must engage in a comparative evaluation; it must consider, not only inferences urged by the plaintiff, . . . but also competing inferences rationally drawn from the facts alleged. An inference of fraudulent intent may be plausible, yet less cogent than other, nonculpable explanations for the defendant's conduct. To qualify as "strong" within the intendment of [§ 78u-4(b)(2)], we hold, an inference of scienter must be more than merely plausible or reasonable--it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent.

Tellabs., 551 U.S. at 314.

5

"[W]here an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts upon which that belief is formed." Kinder-Morgan, 340 F.3d at 1-98 (citing 15 U.S.C. § 78u-4(b)(1)) (internal quotations omitted). When determining whether the facts alleged in a complaint support a reasonable belief that the defendant's statements were false or misleading, the court evaluates the facts alleged as a whole, particularly "(1) the level of detail provided by the facts stated in a complaint; (2) the number of facts provided; (3) the coherence and plausibility of the facts when considered together; (4) whether the source of the plaintiff's knowledge about a stated fact is disclosed; (5) the reliability of the sources from which the facts were obtained; and (6) any other indicia of how strongly the facts support the conclusion that a reasonable person would believe that the defendant's statements were misleading." Kinder-Morgan, 340 F.3d at 1099. "If, measuring the nature of the facts alleged against these indicia, a reasonable person would believe that the defendant's statements were false or misleading, the plaintiff has sufficiently pled with particularity facts supporting his belief in the misleading nature of the defendant's statements." Id.

The thrust of the plaintiff's securities fraud claim is contained in paragraphs 18, 22-23, and 31 of the Amended Complaint, where it is alleged:

> Apparently, there was never really any "option" on the Property for Plaintiff (or others similarly situated) to demand that Sibling sell or exercise in order to repay its debenture indebtedness.
> \* \* \*
> On information and belief, Plaintiff asserts that the Purchase Option described in the Debenture either did not exist, was not owned by Defendants, was not valid, or was completely or almost completely worthless at the time the Debenture was executed, and was merely added to the Debenture as a sham to deceive Plaintiff and to entice Plaintiff to invest.

> Plaintiff further asserts that Defendants, and each of them, knew
> the Purchase Option described in the Debenture either did not
> exist, was not owned by Defendants, was not valid, or was
> completely or almost completely worthless at the time the
> Debenture was executed.
>
> * * *
>
> On information and belief, Plaintiff asserts that Defendants had no
> intention to "secure" the sale of the securities to Plaintiff by the
> sale of the Purchase Option on the Property, the exercise of the
> Purchase Option and sale of the Property, or any of the other
> artifices, whether totally untrue at the time of offering the
> securities to Plaintiff, or through the exercise of reasonable care
> Defendants would have known the statements of material fact upon
> which Plaintiff relied to make his purchase of Debenture were
> untrue, or there were omissions of key facts upon which Plaintiff
> may not have made an investment.

*Amended Complaint* at ¶¶18, 22-23, and 31 (emphasis added).[2]

These allegations of scienter, all made on information and belief, form the foundation of the plaintiff's securities fraud claim. Contrary to the requirements of the PSLRA, however, the Amended Complaint fails to allege with particularity the facts upon which the plaintiff's beliefs with respect to these allegations were formed. Kinder-Morgan, 340 F.3d at 1099. To the contrary, the plaintiff's allegations of fraud are wholly conclusory. As a result, the plaintiff has failed to create a cogent inference of scienter that is at least as compelling as any opposing inference of nonfraudulent intent.

---

[2] Although the plaintiff mentions other instances which he claims to constitute fraud, they either (i) are premised on the assertion that the Purchase Option either did not exist or was valueless, see, e.g., *Amended Complaint* at ¶¶24 and 27 (alleging that the individual defendants conspired to get their "story straight"), ¶25 (alleging statements by the individual defendants "explaining the validity and solidity of the Purchase Option and each and every other form of repayment schema found in the Debentures"), and ¶43 (alleging that the "security" was worthless); or (ii) are similarly based on information and belief but fail to allege with particularity the facts upon which the plaintiff's beliefs were formed. See, e.g.. id. at ¶31 (alleging "[o]n information and belief" that the defendants "had no intention to 'secure' the sale of the securities" through any of the "artifices stated in the Debenture").

7

## CLAIM THREE

Claim Three alleges that the defendants fraudulently induced the plaintiff to invest in the debentures. The defendants argue that Claim Three fails under Colorado state law. However, the debentures state that they "shall be governed by and construed in accordance with the laws of the State of New York, without giving effect to the conflicts of laws thereof." *Amended Complaint*, Ex. A at §13; Ex. B at §13. No argument based on New York law is provided.

In addition, the defendants argue that Claim Three should be dismissed under Rule 9(b), Fed. R. Civ. P., for failure to plead fraud with particularity. Initially:

> Since Rule 9(b) is a special pleading requirement, it concerns procedure in the federal courts and should govern in all civil actions, including all suites in which subject matter jurisdiction is base on diversity of citizenship or actions in which supplemental jurisdiction under Section 1267 of Title 28 of the United States Code is invoked.

5AWright & Miller, Federal Practice and Procedure: Civil 3d §1297 at p. 55.

Second, "a complaint alleging fraud must set forth the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof." Koch v. Koch Industries, Inc., 203 F.3d 1202, 1236 (10th Cir. 2000) (internal quotations and citations omitted). In addition, "[a]llegations of fraud may be based upon information and belief when the facts in question are peculiarly within the opposing party's knowledge and the complaint sets forth the factual basis for the plaintiff's belief." Scheidt v. Klein, 956 F.2d 963, 967 (10th Cir. 1992).

Here, the plaintiff's allegations of fraud are all made on information and belief and are wholly conclusory. Other than stating it to be so, the allegations fail to set forth the factual bases for the plaintiff's belief that the Purchase Option "either did not exist, was not owned by

8

Defendants, was not valid, or was completely or almost completely worthless at the time the Debenture was executed, and was merely added to the Debenture as a sham to deceive Plaintiff and to entice Plaintiff to invest."

I respectfully RECOMMEND that the Motion be GRANTED and that Claims Two and Three of the Amended Complaint be dismissed with prejudice.

FURTHER, IT IS ORDERED that pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), the parties have 14 days after service of this recommendation to serve and file specific, written objections. A party's failure to serve and file specific, written objections waives *de novo* review of the recommendation by the district judge, Fed. R. Civ. P. 72(b); Thomas v. Arn, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. In re Key Energy Resources Inc., 230 F.3d 1197, 1199-1200 (10th Cir. 2000). A party's objections to this recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review. United States v. One Parcel of Real Property, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated September 2, 2010.

BY THE COURT:

s/ Boyd N. Boland
United States Magistrate Judge